Good morning, Your Honors. My name is Tom Patton. I'm here today representing the appellant Guadalupe Mejia. The Due Process Clause requires that a sentence be based on facts that have been established by a preponderance of the evidence. And if the government fails to establish facts by a preponderance of the evidence, that does not simply mean that you can't base a guideline enhancement on those facts. It also means you can't use those unproven facts when applying the 3553A factors. And that is what the district court did here. They had testimony and litigated whether or not the government could establish that Mr. Mejia knew Mr. McLean was bringing a gun, encouraged Mr. McLean to use the gun, or was in any way legally responsible, either directly or through Illinois' Theory of Accountability, their Illinois Accountability Statute, for McLean bringing a gun and then firing the gun at Winters and Tarkington. And after hearing all of the evidence, Judge Darrow said she did not find the government's evidence credible, and basically the only evidence they had was one statement by Mr. Winters, although he had recanted it. And she literally said that was not enough. She could not find, by a preponderance of the evidence, that Mr. Mejia had aided and abetted McLean or was accountable as an assessor, excuse me, under Accountability Theory. And that means she found that there was no common criminal design or agreement between Mejia and McLean for McLean to bring a gun or use a gun. Therefore, the government failed to prove that. So it wasn't part of the circumstances of the offense, because the offense was, after all the events occurred at the bar, what Mr. Mejia did is he took what he pled guilty to, what he admitted to, is he took possession of the gun and hit it. And he can't do that because he's a felon. He can't possess the gun. Now, in addition to that, there was this fight between Mejia and Winters that precipitated Mejia calling McLean to the scene. And the judge literally said she did not know what happened and who was the aggressor, either Winters or Mejia, because there was conflicting information on that fact. It is clear, however, that Mejia pulled the knife, correct? It is clear that Mr. Mejia had a knife, yes. And that very much troubled the district judge. Was self-defense argued at the sentencing? It was not argued at the sentencing, but the reason it wasn't involved is that the district judge gave, and she's not required to give notice, okay, and I understand that. But at the PSR, the argument was that the gun was possessed in connection with the felony offense of aggravated discharge of a firearm. And that's what all the litigation focused on. The first time the aggravated assault gets mentioned is when Judge Darrow is imposing sentence and she says, I find that Mr. Mejia committed the offense under Illinois law of aggravated assault, which is a misdemeanor offense, so it can't, even if it had been established, it couldn't be the basis for the four-level enhancement because it was a misdemeanor felony. The four-level enhancement she did not impose? Correct. Well, she gave a sentence that was in the range of if the four-level enhancement did apply. Should the district judge have to care whether Illinois treats attacking somebody with a knife in a bar fight as a misdemeanor or a felony? When she specifically says, I'm basing a variance on a finding that Mr. Mejia violated a specific Illinois statute, she has to care as to whether or not the government has established by a preponderance of evidence that Mr. Mejia committed. That wasn't my question. Does she have to care about Illinois' legal treatment when she finds that Mejia attacked Winters with a knife? Well, first of all, she didn't find Mr. Mejia attacked Winters initially, but does she, there's nothing that says she is required to link it. He pulled the knife, correct? Yes, he had a knife. Thank you. My point is, is that under Illinois law, if Winters is the aggressor, Mr. Mejia is perfectly within his legal rights to use a knife to defend himself against the fear of great bodily harm. And it does not matter whether or not the attacker is armed. And that is clear under Illinois case law, People v. Evans, which we cite in the brief makes clear that the aggressor does not have to be armed for the person being attacked to use a deadly weapon. And in People v. Francis, the Illinois court said it was error not to allow the injuring instruction on self-defense where one individual was confronted by two other individuals threatening him with bodily harm. And what Judge Darrow did here is tie her variance to a very specific Illinois crime, saying, I find, I am basing this on the fact that I find you committed this crime that you heard no argument about, didn't explain what facts led her to conclude that he committed that offense. It appears she assumed that as long as Mr. Mejia pulled a knife, that that committed, that constituted aggravated assault because it was a threat to commit a battery, that's not the law in Illinois. So even if she was not required to link it to a particular statute, she did. And you can't base your sentence on something that is legally has not been established. And again, the reason self-defense doesn't get talked about is that the parties had absolutely no notice whatsoever that she was even thinking about basing a variance on a finding that there was an aggravated assault. Now again, as I said in the brief, under Azari, she's not required to give that notice. But one of the consequences of failing to give the parties notice that you're going to base a variance on a finding that a statute's been violated is the judge didn't have the This hasn't been established. And I would submit that a judge saying I don't really know what happened in this fight, and then turning around and saying I find that you committed a crime in this fight, is basing a sentence on unreliable evidence and unsubstantiated hunches. I don't think that's what she did. She said she could consider the conduct even though she wasn't going to count it for purposes of the enhancement. That's what she specifically said. I don't have to ignore the fact that the conduct occurred in connection with the possession of this firearm. So that's fair game under 3553. Right. But what conduct? And the conduct has to be established. She was saying the conduct was Mr. Mejia committing the offense of aggravated assault. That's what she said. No. She never made a finding that he committed that offense. She's considering the aggressive, violent, armed fight as a matter of offense conduct in evaluating 3553A. She's not making a finding that you committed this offense under Illinois law, and so I'm going to upwardly vary. Your Honor, she made a finding that he committed the offense of aggravated assault under Illinois law by threatening to commit a battery with the use of, putting Mr. Winters in fear of a battery while armed, and she said, and this is how you know she relied specifically. Armed with a knife. And she said, I can't give you the four-level enhancement based on my finding that you committed that offense because it's a misdemeanor. She then said, but I can consider that conduct. And so when she's saying that conduct, she is saying her finding that he committed an aggravated assault. Bringing a knife to a fight and producing it during the fight. Well, that's a crime, right? And by a guy who's got a long history of pulling knives on people from his mother to his girlfriend to other folks, right? He has a history of some offenses that involve knives, but I want to back up. There's nothing unlawful for him having the knife. He did not bring the knife to the fight. He was at the bar on his own doing, playing video slots, and Winters showed up. So he didn't bring a knife to the fight. Then Winters started getting into it with his ex-girlfriend, who Mr. Mejia had also had relations with, and then the fight started. So it is not that Mr. Mejia goes down to the bar with a knife looking for a fight with Mr. Winters. That is not the evidence at all. So there is nothing unlawful about Mr. Mejia being at a bar with a knife. But the knife comes out during the fight, and the judge says you used the knife to put him, Winters, in fear of a battery. Correct. However... There's pledge... You know, the record supports that, certainly. It does not support that he committed a battery, that that conduct amounts to an aggravated assault, or that it was unlawful or improper in any way. Winters is six foot tall and 240. Mr. Mejia is 5'6", 160, excuse me. The judge says, I don't know who started this, because there is evidence that Winters hit Mejia first, before the knife ever comes out. Winters claims Mejia came after him. The judge says, I don't know what one of those is true. If Winters hit Mejia first, and is a half a foot taller, outweighs him by 80 pounds, it is not unlawful for Mr. Mejia to pull a knife and use that to protect himself from suffering great bodily harm. And the judge found that he did commit that offense. She linked it to that very specific finding. And that was not substantiated. Okay, thank you, Mr. Cotton. Mr. Baum? Thank you, Your Honor, may it please the court, Jason Baum on behalf of the United States. By the time Mr. Mejia committed the crime we're here for, which is the possession of a firearm, he knew that that gun had been used to shoot at the people he had just been in the fight with. The fact that he was not the shooter, or that the district judge said, I'm not finding that you're the shooter, she didn't apply a guideline enhancement for that, but it's certainly part of the circumstances of this offense that once he's there and knows, he would have seen, he would have heard the shot, he then hides the gun, that is certainly part of the circumstances of this offense. And there's no error by the district court in considering that conduct under 3553A to enhance the sentence. He was responsible, morally so, for the gun being brought to the fight. Maybe he didn't know the gun was going to be brought, but he's the one who called reinforcements in who arrived with the gun that he then used. Was there evidence of a gang connection here? There was evidence, I believe, of a gang connection between Mr. Mejia and Mr. McClain. They yelled, the folks, I believe that's undisputed, after the shooting took place towards Mr. Winters and Mr. Tarkington. What about Mr. Patton's point about the knife? The knife, Your Honor, I think that, again, the fact, the conduct that I think Judge Darrow was considering was that Mr. Mejia was armed with a knife. And I think it is undisputed that Mr. Winters was backing up and tripped, fell over, and that the fight continued on the floor. That would suggest he was in fear of a battery if he's backing up and falls down going backwards. And I don't know, with regard to the weights and sizes of the individuals involved, I'm not sure where in the record the evidence of that is. Mr. Patton, I think, might know the record better than I do with respect to that. Did Mejia stab him? I don't believe there was a wound with the knife, no, Your Honor. Unless there are any other questions, we will rely on our brief. Okay. Thank you very much. Okay, and thank you, Mr. Patton.